COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| M&A TECHNOLOGY, INC., | § | |
| | | No. 08-08-00022-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 44th District Court |
| IVALUE GROUP, INC., A/K/A | § | |
| EXPLORE, INC. AND JULIAN ROSS, | | of Dallas County, Texas |
| | § | |
| Appellees. | | (TC#02-09794-B) |
| | § | |

## OPINION ON MOTION FOR REHEARING AND REMITTITUR

After this Court reversed the trial court's judgment and remanded for a new trial, IVG filed a motion for rehearing and voluntary remittitur, asking that we accept the remittitur and affirm the judgment as reduced, and that we sever M&A's claims against Ross. We reject IVG's voluntary remittitur and deny its motion for rehearing.

### *Remittitur*

The Texas Rules of Appellate Procedure provide that if an appellate court reverses a judgment because of a legal error that affected only part of the damages awarded, the affected party may voluntarily remit the amount believed to cure the error. TEX. R. APP. P. 46.5. If the voluntary remittitur is sufficient to cure the error, the appellate court must accept it and affirm the judgment as reformed. *Id*. However, if the voluntary remittitur is not sufficient, but the court determines that remittitur is appropriate, the court must suggest a proper remittitur. *Id*.

IVG requested to voluntarily remit $800,000, believing that amount will cure the reversible error in this case. IVG bases the $800,000 on language in this Court's opinion that Ratliff's testimony supported a jury award of $2.2 million in actual damages, not $3 million. *See M&A Tech.,*

*Inc. v. iValue Group, Inc.*, No. 08-08-00022-CV, — S.W.3d —, 2009 WL 2456289, at *8-9 (Tex. App.–El Paso Aug. 12, 2009, no pet. h.) (not yet reported). This Court never held that the evidence was legally and factually sufficient to sustain a jury award of $2.2 million. *Id*. Rather, we found it unnecessary to address M&A's argument that the cost method employed by Ratliff, which failed to rely on economic obsolescence, was error when Ratliff's testimony, at most, would only appear to support a jury award of $2.2 million. *Id*. Because we never determined that the evidence was actually sufficient to support an award of $2.2 million, we find IVG's remittitur of $800,000 insufficient to cure the error.

Nevertheless, if we determine that remittitur is appropriate, we must suggest a proper remittitur. TEX. R. APP. P. 46.5. In this case, Ratliff's cost-method reasoning is flawed; therefore, the evidence is insufficient to support an award on any amount and remittitur is not appropriate. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 712-14 (Tex. 1997) (unreliable scientific expert testimony is legally no evidence); *Plunkett v. Connecticut General Life Ins. Co.*, 285 S.W.3d 106, 116 (Tex. App.–Dallas 2009, pet. filed) (inferences and opinions drawn either from unreliable foundational data or flawed methodology and reasoning are unreliable and legally no evidence).

*Analysis of Cost-Method Approach*

Part of the cost-method approach requires consideration of whether the earnings of the business "are capable of providing a reasonable rate of return on all the property devoted to the enterprise." *See* Gordon V. Smith & Russell L. Parr, Valuation of Intellectual Property and Intangible Assets 206 (3rd ed. 2000). Although Ratliff valued the e-commerce platform at $1.8 million and the hardware and software component at $.4 million, his estimation of future revenue was purely speculative. *See M&A*, 2009 WL 2456289, at *8. We also note that Ratliff's valuation

was based on estimates he collected from website costs and the costs incurred by profitable companies with developing similar technology. But as we noted in our opinion, IVG was a small unproven entity and did not compare to large, profitable companies. *See M&A*, 2009 WL 2456289, at *9. Thus, there is no way to determine whether IVG's future earnings were capable of providing a reasonable return on its historical cost, i.e., the cost to rebuild the e-commerce platform and the hardware and software component. In other words, Ratliff's opinion was based on flawed methodology and reasoning, and therefore, was no evidence of actual damages under the cost-method approach. *See Havner*, 953 S.W.2d at 712-14; *Plunkett*, 285 S.W.3d at 116.

Accordingly, without any evidence of actual damages, remittitur will not cure the reversible error in this case. *See* TEX. R. APP. P. 46.5. We reject IVG's request for voluntary remittitur.

*Severance*

IVG also asks that we sever M&A's claims against Ross and only remand for a partial new trial. IVG's request is predicated on our acceptance of the remittitur. *See* TEX. R. APP. P. 46.5 (when the voluntary remittitur is sufficient to cure the error, the appellate court must accept it and affirm the judgment as reformed). Because we hold that remittitur is inappropriate, we decline to sever M&A's claims against Ross and remand for a partial trial solely involving Ross' claims. IVG's motion for rehearing is denied.


GUADALUPE RIVERA, Justice

September 30, 2009

Before Chew, C.J., McClure, and Rivera, JJ.